**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| PHILLIP WATSON and JANINE WATSON, | § § § | |
| Plaintiffs, | § § § § | |
| v. | § § | Case No.: 4:10-cv-707 |
| CITIMORTGAGE, INC., | § § § | |
| Defendant. | § § § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the court are:

•      Plaintiffs' Motion to Remand (Dkt. #19), Defendant's Response thereto (Dkt. #24), and Plaintiffs' Reply (Dkt. #25);

•      Defendant's Motion for Summary Judgment (Dkt. #20), Plaintiffs' Response thereto (Dkt. #23), Defendant's Reply (Dkt. #33), and Plaintiffs' Sur-Reply (Dkt. #35); and

•      Plaintiffs' Motion in Limine (Dkt. #30) and Defendant's Response (Dkt. #34).

For the reasons set out below, the court finds that Plaintiffs' Motion to Remand (Dkt. #19) should be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. #20) should be **GRANTED**, and Plaintiffs' Motion in Limine (Dkt. #30) should be **DENIED AS MOOT**.

**I. BACKGROUND**

This case arises out of a Note and Deed of Trust between Plaintiffs Phillip and Janine Watson ("Plaintiffs") and Defendant Citimortgage, Inc. ("Defendant") executed on July 15, 2005. In June

2009, Plaintiffs fell behind on their Note payments. Plaintiffs filed for bankruptcy in October 2009, and were discharged in January 2010. After their bankruptcy discharge, Plaintiffs did not make further payments on the Note, and Defendant sent them a notice of acceleration on February 3, 2010. Thereafter, Plaintiffs began discussions with Defendant from February to November 2010 regarding workout options, including loan modifications, to cure their default. Upon Defendant's request, Plaintiffs applied for the government Home Affordable Modification Program ("HAMP"), but did not qualify. Plaintiffs completed additional loan applications, submitted financial documents, and continued communication with Defendant during these months in pursuit of a loan modification. On October 2, 2010, Defendant sent Plaintiffs notice of acceleration of the Note as well as notice of a substitute trustee's sale set for November 2, 2010. Shortly thereafter, however, Plaintiffs received an email from Defendant on October 7, 2010, stating that Plaintiffs' mortgage assistance request had been approved and that Defendant would deliver a mortgage solution package within the next five to seven business days. Plaintiffs did not receive the mortgage solution package documentation and, upon further inquiry, learned that completion of the paperwork would take longer than anticipated.

On October 20, 2010, Plaintiffs received a letter from Defendant stating that the foreclosure sale was rescheduled for December 7, 2010. During a phone call from Plaintiffs on October 25, 2010, Defendant informed Plaintiffs that it had approved a three-month trial payment plan and that the first payment was due November 1, 2010. Plaintiffs allege, however, that they never received documentation regarding the three-month trial payment plan. According to the evidence on record, Plaintiffs did not make any of the trial payments. Rather, anticipating a foreclosure sale, Plaintiffs filed their Original Petition (Dkt. #3) on December 1, 2010. Pursuant to a Temporary Restraining Order (Dkt. #1, Exh. 2, at 24–26) issued by the state district court, the foreclosure sale was cancelled.

In their Original Petition, Plaintiffs' claims were based generally on allegations that Defendant led Plaintiffs to believe their Note terms were being modified to cure their default while Defendant nevertheless assessed penalties, accelerated the loan, and attempted foreclosure.

On December 23, 2010, Defendant filed a notice of removal (Dkt. #1) pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). On September 30, 2011, this court issued a Memorandum Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss (Dkt. #15). Pursuant to the court's order, Plaintiffs filed an amended complaint (Dkt. #16), alleging claims for breach of contract, anticipatory breach of contract, violation of the Texas Property Code, unreasonable debt collection efforts, negligent misrepresentation, and violation of the Texas Debt Collection Practices Act ("DCPA"). Plaintiffs also seek declaratory judgment. Recently, Plaintiffs filed a motion to remand the case to state court on November 15, 2011 (Dkt. #19). Defendant has also filed a motion for summary judgment (Dkt. #20) regarding all of Plaintiffs claims in the amended complaint.

## II. MOTION TO REMAND

The court will first turn to Plaintiffs' motion to remand. Defendant removed this suit to this court on December 23, 2010, and Plaintiffs filed their motion to remand on December 12, 2011, nearly one year after the notice of removal. *See* Mot. to Remand 1. While Plaintiffs do not dispute diversity of citizenship, they argue that the amount in controversy does not exceed $75,000.00.

Federal law permits a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). However, "removal raises significant federalism concerns, which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365–66 (5th Cir. 1995). The party invoking federal diversity jurisdiction bears the burden of establishing the amount in

controversy by a preponderance of the evidence. *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). In considering whether the burden was met, the court "first examine[s] the complaint to determine whether it is facially apparent that the claims exceed the jurisdictional amount." *Id*. Then, if it is not apparent from the complaint, the court may rely on "summary judgment type evidence," judging the facts "as of the time the complaint is filed." *Id*. (internal quotations omitted).

In actions seeking declaratory judgment or injunctive relief, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Id*. The Fifth Circuit clarified that "[w]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009). *See also Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.1 (5th Cir. 1996) (noting that the proper measure of the amount in controversy is "the value to the *plaintiff* of the right to be enforced or protected." (emphasis in original) (internal citation and quotation omitted)).

Here, Plaintiffs seek *inter alia* a declaratory judgment, "[p]ursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, . . . that this Court consider the terms of the Deed of Trust contract and Note and find that Plaintiffs have not materially breached the Deed of Trust contract on the property, and that Defendant wrongfully attempted to foreclose on Plaintiffs' property." Am. Compl. 13, ¶ 42. Because foreclosure is at issue and because Plaintiffs' right to and interest in the property is at stake, the court finds that the value of the property is the appropriate measure of the amount in controversy in this case. According to the Denton Central Appraisal District, the tax-assessed value of the property in this case is $312,179.00. *See* Dkt. #1, Exh. A.

Therefore, the amount in controversy is satisfied. Further, because Plaintiffs have waited until this late date to file their motion to remand, significant costs and fees have accumulated such that the amount in controversy certainly exceeds $75,000.00. *See* Dkt. #24-1, at 3. Accordingly, the court is of the opinion that Plaintiffs' motion to remand (Dkt. #19) should be **DENIED**.

### III. MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment may be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of the rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24. Therefore, a court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether to grant summary judgment, the court construes all facts and inferences in the light most favorable to the nonmoving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

Both parties bear burdens of producing evidence in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Id*. at 323. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248.

**B. BREACH OF CONTRACT**

Plaintiffs first cause of action is a claim for breach of contract, wherein Plaintiffs allege that the Defendant breached the Note and Deed of Trust by attempting to foreclose without providing Plaintiffs with proper notice or the opportunity to reinstate the loan or cure their default. Further, Plaintiffs allege that the Defendant waived its right to foreclose, and should be equitably estopped.

    1.     BREACH OF THE NOTE AND DEED OF TRUST AND VIOLATION OF THE TEXAS PROPERTY CODE

In their amended complaint, Plaintiffs claim that Defendant breached the Note and Deed of Trust, as well as the Texas Property Code, by failing to give Plaintiffs proper notice of foreclosure, or the opportunity to reinstate the loan or cure the default. Am. Compl. 7, ¶ 18. The Defendant, however, argues that it did not breach any provision of the contract, because it provided Plaintiffs with notice of their default via certified mail on February 3, 2010. Def.'s Mot. Summ. J. 9. Defendant further asserts that, though it allowed Plaintiffs additional months to cure the default, no further notice was required under the Note and Deed of Trust or under Texas law. *Id.* (citing *Fitzgerald v. Harry*, No. 2-02-330-CV, 2003 WL 22147557, at *3–4 (Tex. App—Fort Worth Sept. 13, 2003) (mem. op.); *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 30–31 (Tex. App.—Dallas 1992, no writ)). The court agrees with the Defendant.

In Texas, "the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff[s]; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life. Ins. Co. v. Kirsh*, 378 F. App'x 379, 383 (5th Cir. 2010) (internal quotation omitted). Texas Property Code, Section 51.002, requires that notice of a foreclosure sale must be given at least twenty-one

days prior to the date of sale. TEX. PROP. CODE ANN. § 51.002(b); *see also* Pl.'s Resp. 9. Here, the Deed of Trust contains a provision specifically stating that, once proper notice is given "prior to acceleration following Borrower's breach of any covenant," the Defendant may require immediate payment in full "without further demand." Def.'s App. 35. Defendant provided acceleration notices on February 3, 2010, and on October 2, 2010, well over twenty-one days before the attempted foreclosure in December 2010. With no evidence that Plaintiffs made intervening payments after the notices, such that arguably might have reinstated the contract, the court finds that there is no genuine issue of material fact as to whether Defendant met its notice requirements under the Deed of Trust and the Texas Property Code. *See Tremble v. Wells Fargo Home Mortg., Inc.*, No. G-11-160, 2011 WL 2959624, *5 (S.D. Tex. July 20, 2011). *See also* Def.'s App. 21, 35, 39–40. Plaintiffs have failed to show any evidence of breach of the Note or Deed of Trust by Defendant, or violation of the Texas Property Code notice requirements.

In the alternative, Plaintiffs have failed to show a genuine issue of material fact regarding the satisfaction of the second element required for a breach of contract claim—that Plaintiffs tendered performance. *See Kirsh*, 378 F. App'x at 383. Plaintiffs were in default on their loan payments and had not performed under the contract since being discharged from bankruptcy in January 2010. Accordingly, Defendant's motion regarding Plaintiffs' breach of contract claim is **GRANTED**.

> **2.    WAIVER AND ESTOPPEL**

Plaintiffs argue that summary judgment should be denied because "the Defendant waived its right to accelerate and foreclose and is estopped." Am. Compl. 8, ¶ 20. Plaintiffs allege that, due to Defendant's "actions and failures to act between February 2010 through [sic] December 2010," it waived any contractual breach by the Plaintiffs and should be estopped from enforcing the Note and

Deed of Trust. Pl.'s Resp. 10. Defendant argues there was no waiver because it never expressed actual intent to waive its right to foreclosure under the contract.

Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). In this case, the Note provides—under the subheading "No Waiver By Note Holder—that "if, at a time when [the borrower is] in default, the Note Holder does not require [the borrower] to pay immediately in full . . . , the Note Holder will still have the right to do so if [the borrower is] in default at a later time." Def.'s App 21, ¶6(D). More importantly, however, the Deed of Trust explicitly states that "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." *Id*. at 32, ¶12. Accordingly, pursuant to the terms of the Deed of Trust, Defendant's forbearance from immediate foreclosure did not constitute waiver of its rights or remedies stemming from Plaintiffs' breach. Defendant's motion for summary judgment regarding Plaintiffs' claim of waiver is **GRANTED**.

The court has already dismissed without prejudice Plaintiffs' claim for estoppel. *See Watson v. Citimortgage, Inc.*, __ F. Supp. 2d __, 2011 WL 4526980, at *4 (E.D. Tex. Sept. 30, 2011). However, in their amended complaint, Plaintiffs repled the claim but did not provide the court with further factual allegations regarding estoppel and did not even list the elements of estoppel. Am. Compl. 8, ¶20; *cf.* Compl. 8, ¶22. It was not until Plaintiffs' response to Defendant's motion for summary judgment that they listed the elements of equitable estoppel and identified their factual allegations therein. *See* Pl.'s Resp. 17. Because Plaintiffs failed to correct the deficiencies in their complaint, the court **DISMISSES** Plaintiffs' estoppel claim with prejudice.

## C. ANTICIPATORY BREACH OF CONTRACT

In addition to their breach of contract claim, Plaintiffs allege that Defendant committed an anticipatory breach of contract. Am. Compl. 9, ¶22. To prevail on a claim for anticipatory breach of contract under Texas law, Plaintiffs must establish: (1) an absolute repudiation of an obligation, (2) lack of a just excuse for the repudiation, and (3) damage to the non-repudiating party. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). In its motion for summary judgment, Defendant maintains that it "did not repudiate its contractual obligations, [but] it simply sought to enforce its contractual rights." Def.'s Mot. Sum. J. 13.

An absolute repudiation of a contract "may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms" in the future. *Narvaez v. Wilshire Credit* Corp., 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010) (citing *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.—Houston [14 Dist.] 1984, no writ)). To absolutely repudiate a contract, a party's declaration of intent to abandon must be made positively and unconditionally, with the fixed intention to abandon, renounce, and refuse to perform his obligation. *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ); *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex. Civ. App.—Waco 1965, writ dism'd).

Plaintiffs' amended complaint alleges that Defendant anticipatorily breached the Deed of Trust by failing to give Plaintiffs an opportunity to cure the default and failing to give proper notices before the attempted foreclosure. Am. Compl. 9, ¶22. Subsequently, Plaintiffs clarified their argument in their response brief, arguing that Defendant actually formed a new contract with Plaintiffs when it informed them of a loan modification approval in October 2010, then repudiated its obligations by failing to send the loan modification papers and attempting foreclosure. Pl.'s Resp.

19.   As discussed above, Defendant provided Plaintiffs with proper notice of acceleration and

foreclosure.  *See supra* III.B.1.  And even if it had not, improper notice of acceleration would not

constitute a positive or unconditional intent to abandon the contract.  Further, the evidence shows

that Plaintiffs received information regarding the approved trial payment plan both by phone and by

mail. *See* Def.'s App. 80; Am. Compl. 6, ¶14–16.  The facts surrounding the loan modification

discussions show, at worst, conflicting messages by Defendant to Plaintiffs.  Such inconsistences

fall quite short of the "positive and unconditional" repudiation that is necessary to establish a claim

for anticipatory breach of contract. *See Swim v. Bank of Am.*, No. 3:11-cv-1240, 2012 WL 170758,

at *5 (N.D. Tex. Jan. 20, 2012).  Accordingly,  the court finds that Plaintiffs have presented no

evidence that would permit a reasonable trier of fact to find for the Plaintiffs on this claim.

Defendant's motion is **GRANTED** regarding the claim for anticipatory breach of contract.

## D.  UNREASONABLE COLLECTION EFFORTS

Unreasonable collection efforts is a Texas common-law intentional tort.  To prove this

intentional tort, Plaintiffs must show that Defendant engaged in a "course of harassment" that "was

willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *See Watson*,

2011 WL 4526980, at *5; *Burnett v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955,

at *6 (E.D. Tex. Jan. 27, 2011).  The reasonableness of a defendant's actions are judged on a case-

by-case basis. *Burnett*, 2011 WL 6766955, at *5.  Here, Plaintiffs allege that Defendant misled

Plaintiffs regarding the status and amount of their loan, failed to give Plaintiffs the opportunity to

reinstate their loan or cure their default, and made harassing telephone calls. Am. Compl. 10, ¶26.

Defendant argues, however, that Plaintiffs were in default throughout the time the alleged acts

occurred, and have shown no extraordinary circumstances or actions on the part of the Defendant

to warrant survival of this claim past the summary judgment stage. Def.'s Mot. for Summ. J. 15.

Plaintiffs attempt, again, to convince the court to adopt a definition of unreasonable collection efforts that is similar to a negligence standard. However, in the court's last order, it adopted the definition most widely accepted by Texas courts, which requires malicious intent rather than merely negligence. *See Watson*, 2011 WL 4526980, at *5. Pursuant to the evidence provided to the court at this time, there is no genuine issue of material fact regarding alleged harassment or malicious conduct by the Defendant in its debt collection efforts. Courts throughout Texas have held similarly under similar facts. *See, e.g., Burnette*, 2011 WL 676955, at *6; *Narvaez*, 757 F. Supp. 2d at 635; *Steele v. Green Tree Servicing, LLC*, No. 3:09-cv-0603, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010); *Mitchell v. Chase Home Finance, LLC*, No. 3:06-cv-2099, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008). Plaintiffs were in default, and Defendant was attempting to collect the amounts owed to it.[1] Further, Plaintiffs have produced no evidence that Defendant's phone calls were harassing. In fact, the amended complaint includes allegations regarding a lack of communication with the Defendant. *See* Am. Compl. 4, ¶11. Taking all of the evidence in the light most favorable to Plaintiffs, no reasonable trier of fact would find that the Defendant intended its actions "to inflict mental anguish and bodily harm" upon Plaintiffs. Therefore, summary judgment is **GRANTED** for the Defendant on this claim.

## E. TEXAS DEBT COLLECTION PRACTICES ACT

Plaintiffs allege that Defendant violated numerous provisions of the Texas Debt Collection

---

[1]Plaintiffs cite to *Verdin v. Fed. Nat'l Mortg. Ass'n*, No. 4:10-cv-590, 2011 WL 4347050, *4 (E.D. Tex. Aug. 24, 2011), and *Overholt v. Wells Fargo Bank, N.A.*, No. 4:10-cv-618, 2011 WL 4862525, *7 (E.D. Tex. Sept. 2, 2011), to support its claim of harassment. However, both of those orders assessed the claims under a Federal Rule of Civil Procedure 12(b)(6) plausibility standard, not under the summary judgment standard before the court today.

Practices Act ("DCPA") when it "deceptively misrepresented that Plaintiffs were qualified and guaranteed a loan modification, purposely delaying Plaintiffs to the point of foreclosure." Am. Compl. 12, ¶ 33–34. Plaintiffs allege violations of the Texas Finance Code, Sections 392.304(a)(8), 392.303(a)(2), 392.301(a)(8), and 392.304(a)(19). *Id.*

First, Plaintiffs allege that Defendant misrepresented the character, extent, or amount of the debt. TEX. FIN. CODE § 392.304(a)(8). Defendant argues that Plaintiffs have not identified any evidence showing that Defendant misrepresented the loan. The court agrees. The DCPA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3). For a statement to constitute a misrepresentation, the Defendant must have made "a false or misleading assertion." *Narvaez*, 757 F. Supp. 2d at 632. Plaintiffs direct the court to no evidence showing that Defendant made false or misleading assertions regarding the character, extent, or amount of the debt. Discussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt.

Second, Plaintiffs allege that Defendant collected unauthorized interest or charges, TEX. FIN. CODE § 392.303(a)(2), yet cite no evidence that Defendant used "unfair and unconscionable means to collect interest, charges, fees or expenses incidental to the original obligation." Pl.'s Resp. 24. The Deed of Trust specifically authorizes Defendant to charge the borrower fees in connection with a default on the loan. Def.'s App. 32, 35. Without evidence of charges unauthorized by the Deed of Trust, the court cannot find a genuine issue of material fact regarding this claim.

Third, Plaintiffs allege that Defendant threatened action prohibited by law. TEX. FIN. CODE § 392.301(a)(8). Plaintiffs did not provide factual allegations supporting this claim until their

response to Defendant's motion for summary judgment. Pl.'s Resp. 24; *cf.* Am. Compl. 12, ¶ 33–34.

In their response, Plaintiffs argue that Defendant threatened to take illegal action when it "told

Plaintiffs [it] would not foreclose during the loan modification process, . . . [then attempted] to

foreclose after approving Plaintiffs for a loan modification." Pl.'s Resp. 24. Foreclosure is not an

action prohibited by law. Thus, Defendant did not violate this section of the Texas Finance Code.

Finally, Plaintiffs allege that Defendant violated the DCPA by using "deceptive means to

collect a debt." TEX. FIN. CODE § 392.304(a)(19). Again, the DCPA does not prevent a debt

collector from "exercising or threatening to exercise a statutory or contractual right of seizure,

repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3).

Plaintiffs have pointed to no evidence that would permit a reasonable trier of fact to find that

Defendant's discussions regarding loan modifications and Defendant's delaying foreclosure while

attempting to work out a trial payment plan constitute "deceptive means" to collect a debt.

Therefore, due to the forgoing reasons, Defendant's motion for summary judgment is **GRANTED**

on the claim of violation of the Texas Debt Collection Practices Act.

## F. NEGLIGENT MISREPRESENTATION

Plaintiffs' amended complaint alleges that the Defendant "failed to use reasonable care in

communicating the correct status of Plaintiffs' mortgage loan" by informing Plaintiffs that their loan

would be modified and there would be no foreclosure. Plaintiffs argue that they relied on the

representations to their detriment. *See* Am. Compl. 13, ¶ 41. Under Texas law, a claimant alleging

negligent misrepresentation must show the following:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not

exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). "The misrepresentation at issue must be one of existing fact" rather than a promise of future conduct. *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011). This court, in denying Defendant's motion to dismiss Plaintiffs' negligent misrepresentation claim, held that Plaintiffs' "assertion that they refrained from making loan payments, and in doing so they unknowingly incurred fees and expenses, plausibly alleges pecuniary loss." *Watson*, 2011 WL 4526980, at *7.

Now, in the summary judgment stage, Plaintiffs must have put forth some evidence to establish this claim. Defendant asserts that all representations it made to Plaintiffs were either accurate and consistent, or were promises of future conduct which are not actionable under a claim for negligent misrepresentation. Defendant further argues that this tort claim fails "because it flows from the contractual relationship" between the parties. Def.'s Mot. Sum. J. 20. The court agrees with the Defendant that many of the alleged promises to modify the loan or delay foreclosure were promises of future conduct, and not statements of existing facts as is required to prove a claim for negligent misrepresentation. *See* Am. Compl. 13, ¶ 41; Pl.'s Resp. 28–29; Def.'s Reply 8.

Further, parties to a contract may breach duties in tort or contract or both. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). However, tort obligations "are in general obligations imposed by law—apart and independent of promises made." *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotation omitted). Therefore, "if the defendant's conduct . . . would give rise to liability *independent of the fact that a contract exists* between the parties, the plaintiff's claims may also sound in tort." *Id*. (emphasis added). But if a tort claim arises solely from

the parties' contractual relationship, Texas courts have long disallowed such a claim. *See, e.g., Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.); *Southstar Corp. v. St. Paul Surplus Lines Ins. Co.*, 42 S.W.3d 187, 193 (Tex. App.—Corpus Christi 2001, no pet.); *Defranceschi v. Wells Fargo Bank, N.A.*, No. 4:10-cv-455, 2011 WL 3875338, at *7 (N.D. Tex. Aug. 31, 2011); *Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998).

Here, Plaintiffs' tort claim for negligent misrepresentation flows solely from the Note and Deed of Trust. In other words, "but for the existence of this contractual relationship, Plaintiffs' non-contractual claim of negligent misrepresentation would not exist." *Defranceschi*, 2011 WL 3875338, at *7. Accordingly, Defendant's motion for summary judgment on this claim is **GRANTED**.

## G. DECLARATORY JUDGMENT

Declaratory judgment is simply a form of relief based on an underlying claim. *See Collin Cnty. Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170–71 (5th Cir. 1990). Declaratory judgment is remedial only, and depends upon the existence upon a justiciable controversy between the parties. Because the court has granted summary judgment for the Defendant on all of Plaintiffs' underlying substantive claims, the court finds that Plaintiffs are not entitled to declaratory relief.

## IV. CONCLUSION

For the reasons stated above, the court concludes that Plaintiffs' Motion to Remand (Dkt. #19) is hereby **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. #20) is hereby **GRANTED**. Consequently, Plaintiffs' Motion in Limine (Dkt. #30) is **DENIED AS MOOT**. All of Plaintiffs' claims in this case are **DISMISSED**.

IT IS SO ORDERED.
**SIGNED this the 3rd day of February, 2012.**

-15-

_Richard A. Schell_

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE